## SOUTHERN SURETY CO. v. KLEIN.*
(No. 2559.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 2, 1925. Rehearing Denied Jan. 6, 1926.)

1. **Mechanics' liens** ⊙⟹13—Party furnishing materials for public building could not retain title or reserve lien therefor.

Materialman furnishing steel to be used in erection of public building could not retain title or reserve a lien therefor, but could only have city withhold payment of amount necessary to indemnify him for his loss.

2. **Principal and surety** ⊙⟹108(1)—Gratuitous extension of time by materialman to contractor, who becomes insolvent, held not to relieve surety of liability.

Where materialman makes only a gratuitous extension of time to contractor for payment of amount due, after completion of building, and contractor later becomes insolvent, surety on contractor's bond is not thereby discharged, and hence it was not error for court to refuse surety's requested special issue as to whether surety suffered a loss by reason of extension of time and insolvency of contractor.

3. **Principal and surety** ⊙⟹59—Rights of compensated sureties based on same rules as those of uncompensated sureties.

Rules determining rights of uncompensated sureties are applicable to the determination of rights of compensated sureties.

4. **Principal and surety** ⊙⟹108(1)—Extension of time, not based on valuable consideration, held not to estop materialman from proceeding against contractor at demand of surety.

Extension of time by materialman to contractor for payment of claims, not based on any new or valuable consideration, is not binding on materialman, and does not estop him from proceeding against contractor at demand of surety on contractor's bond.

5. **Principal and surety** ⊙⟹108(1)—Gratuitous extension of time by creditor does not release surety, but extension, based on valuable consideration without knowledge of surety, releases him.

A mere gratuitous indulgence by a creditor to principal will not discharge surety, but a valid binding agreement to extend time of payment, based on valuable consideration and made without knowledge of surety, operates to release surety.

6. **Principal and surety** ⊙⟹99—Contractor held to have right to purchase materials on own terms, and change in time for payment thereof held not to relieve surety.

Where contract between city and contractor was silent as to terms on which material was

purchased, and as to parties furnishing materials, the contractor had a legal right to purchase materials on his own terms, and together with materialman to change time of payment, which change did not constitute a change in contract between city and contractor, and hence did not relieve surety on contractor's bond from liability to materialman.

7. **Municipal corporations** ⊙⟹347(2)—Statute for protection of laborers and materialmen read into contractor's bond, regardless of intention of parties.

Though city refused to accept a bond containing provisions required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f, 6394g, and furnished a bond without such provisions, the statutory provisions making bond payable to, or for use and benefit of, laborers and materialmen, are nevertheless read into the bond, regardless of intention of the parties, and parol evidence is not admissible to establish intention of parties to exclude provision of statute.

8. **Municipal corporations** ⊙⟹347(2) — Surety regarded as having knowledge of contractor's bond and attached contract between contractor and materialman.

Where contract between city and contractor implied that latter was to obtain materials by recourse to the market, a party furnishing materials becomes a beneficiary of contractor's bond by reason of Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, which must be read into the bond, and surety company is regarded as having actual knowledge of contents of both bond and contract, attached thereto, and is presumed to know provisions of statute protecting materialman.

9. **Municipal corporations** ⊙⟹347(2)—Materialman held not bound by stipulations intended to establish contractual relations between city and contractor.

In view of analogous construction given to Rev. St. 1895, art. 2369, relating to place of making real estate sales, the purpose of Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, to protect laborers and materialman to the extent only that it makes them beneficiaries of the security, will be so read into the statute, but materialmen not being parties to building contract with city, and not having knowledge of its terms, are not bound by stipulations intended only to establish contractual relations between city and contractor.

10. **Contracts** ⊙⟹167—Statute held to become part of contract involving performance of duty prescribed by statute.

Where contract is made involving performance of duty prescribed by statute, statute becomes part of that contract.

11. **Municipal corporations** ⊙⟹347(2) — City held trustee for all statutory parties to bond.

Under terms of contract by city for construction of an auditorium, whereby it retained percentage of cost until acceptance, and was authorized to retain, out of any payment due, sums sufficient to indemnify it against all liens or claims, and under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, affording materialman benefit of security, which statute is read into con-

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused February 17, 1926.

tractor's bond, the city was trustee for all statutory parties.

**12. Principal and surety ⊗⇒115(1) — Surety held not relieved from liability to materialman, though latter loses additional security.**

Surety on contractor's bond, being chargeable, with knowledge of default of principal, is not, relieved from liability to, materialman, though latter negligently loses additional security for his claim, under rule that a creditor owes no duty of active vigilance to surety to enforce collection of indebtedness arising from obligation.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by J. B. Klein against the Southern Surety Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Jno. T. Suggs, of Denison, and Stone & Guleke, of Amarillo, for appellant.

Lumpkin & Trulove, of Amarillo, and Shirk, Danner & Mills, of Oklahoma City, Okl., for appellee.

RANDOLPH, J. This suit was instituted by Klein, as plaintiff, against the Southern Surety Company as defendant, to recover on a bond given by V. E. Ware, contractor, to the city of Amarillo, which bond was signed by appellant as surety. The city of Amarillo was made a party defendant by cross-action of the surety company. On the closing of the testimony, the defendant surety company announced that it would not further prosecute its cross-action against the city of Amarillo, and such city was thereupon dismissed from the case. No question arises upon this dismissal and none involving the liability of the city is presented here. The case between Klein and the surety company was prosecuted to judgment which was rendered by the court in favor of Klein and against the surety company, and from that judgment appeal is taken by the surety company to this court.

The city of Amarillo and V. E. Ware entered into a contract, whereby Ware obligated himself to erect for the city an auditorium building for the contractual consideration of $224,502.02, subject to additions and deductions on account of alterations. The contract between the city and Ware provided for semimonthly payments on architect's certificates or estimates of 85 per cent. of work done, and provided, also, for a retained 15 per cent. until the completion and acceptance of the improvements, said 15 per cent. to be retained by the city as additional security to the bond provided for in the contract. Final payment was to be made to Ware within 6 days after the building was completed upon certificate of the architect that all work, upon which payment was to become due, had been done to his satisfaction. It is also provided that, if required before such final pay-

ment is made, the contractor should give good and sufficient evidence that the premises are free from all liens and claims chargeable to the contractor, and, further providing, that, if there should be any such liens or claims, the city shall have the right to retain, out of any payment then due, sums sufficient to indemnify it.

The bond provided for in the contract was duly executed and delivered to the city by Ware, signing as principal, and appellant as surety, and was in the sum of $112,500. This bond was conditioned:

That Ware, "his heirs, executors and administrators shall well and truly and faithfully perform all the terms, provisions, conditions and stipulations of a certain contract, etc."

Ware and Klein entered into a contract on May 8, 1922, whereby Klein agreed to furnish the structural steel required for the erection of the building and out of that contract so made, and the performance thereof by Klein, Klein's cause of action, which he is asserting on the bond, arose.

[1] The contract between Ware and Klein provides for the retention of the title and possession in the materials furnished until final payment for same, in Klein. Disposing of this retention of title as provided for, we at this time call attention to the fact that the building here under contract was a public building and such attempt to retain title or to reserve a lien is not permitted by law. The right of Klein, in the absence of the right to fix a lien, only extended to his right, after due notice, to have the city withhold the payment of such an amount as would have indemnified him for his loss.

The trial court submitted only one issue to the jury for their determination, whether or not Klein's material went into the building, and refused to submit for their consideration five specially requested issues of the defendant.

[2] The error alleged and presented in appellant's first proposition No. 1 is that the liability of a surety on a public contractor's bond is discharged by a materialman giving an extension of time to the contractor, if such contractor, in the interim, becomes insolvent and the surety thereby loses its right of indemnification from the contractor, the principal on such bond.

The evidence establishes the following facts: The auditorium was completed and accepted and Ware was paid for it by the city on April 14, 1923. The debt of Klein was then due, but it seems that Klein was trying to get his money from Ware and failing in this, he took from Ware what is denominated a trade acceptance dated September 9, 1923, payable to Klein October 9, 1923, which trade acceptance was never credited on Klein's books and was never paid. Klein testifies that he had never notified the city of the par-

ticular terms of his contract with Ware, but that the city knew that he was furnishing the material to Ware; that he had never notified the surety company of Ware's default on his payment, because Ware "kept on promising he was going to take care of it 'to-morrow' and stalled us along from day to day." During the period between April 14, 1923, and October 9, 1923, Ware became insolvent, and was later adjudged bankrupt.

Under these facts, did the trial court err in refusing to give defendant's requested special issue No. 1, which is as follows:

"Did Klein extend the time of payment to Ware for any sum that you find Ware owed Klein (if you find that Ware owed Klein any sum)? (a) Did Ware become insolvent subsequent to April 14, 1923, the date on which the city made final payment to Ware? (b) Did the surety company suffer injury by reason of such insolvency? And, if so, (c) to what extent in dollars and cents?"

[3] Whatever the rule may be in other states and as held by the Supreme Court of the United States, it is well settled in Texas that the rules determining the rights of uncompensated sureties are applicable to the determination of the rights of compensated sureties. Lonergan v. San Antonio Trust Co., 101 Tex. 77, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 129 Am. St. Rep. 803; Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 153, 216 S. W. 621, 622.

In applying the common rules, common to both classes of sureties, Judge Greenwood in the Hess Case, supra, quotes from Guaranty Co. v. Pressed Brick Co., 191 U. S. 425, 24 S. Ct. 144, 48 L. Ed. 242, with approval, as follows:

"The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days, or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time."

[4] So far as the record discloses, there was never a binding agreement for a definite extension for a valuable consideration executed by Ware to Klein. There was no new consideration paid by Ware for this extension shown by the record; hence such agreement was not binding upon Klein and he was not estopped from proceeding against Ware at the demand of the surety company.

[5] A mere gratuitous indulgence by a creditor to the principal will not discharge the surety, but a valid binding agreement of extension of the time of payment, for a valuable consideration, made without the knowledge of the surety, operates to release him. Lane & Saylor v. Scott & Culver, 57 Tex. 369, 370; Gardner v. Watson, 76 Tex. 25, 32, 13 S. W. 39. Hence the extension of time shown in the record and as evidenced by the trade acceptance, not being based upon any new or valuable consideration, it was not binding on Klein; it was only a gratuitous extension.

[6] But we do not concede that there was any change in the contract between the city and Ware, in any event. There was a change in the time of payment, between Ware and Klein. When Klein gave Ware the extension of time, as stated by Judge Greenwood in the Hess Case, supra:

"There never was any change in the contract guaranteed by this surety company. Such contract was silent as to the terms on which the material for the construction of the bridge was to be purchased. The bond, in effect, authorized the contractor to make his own terms, and we see no good reason why it should be held that this did not include authority, while acting in good faith, to change such terms."

In this case the contract between the city and Ware was silent as to the terms on which the material was to be purchased. It was also silent as to the parties from whom the material was to be obtained. It being contemplated that Ware must have material and labor with which to perform his contract to erect the building, and the contract between the city and Ware being silent as to how and where and the terms upon which he was to get such material, Ware had the legal right to go into the market and purchase same upon his own terms. Consequently, he having made the collateral contract agreement with Klein for the material and in that collateral contract stipulated the time and method of payment for such material he and Klein had the authority to change the time of payment for such material, and such change was not a change of any term of the city's contract.

We do not think that the trial court erred in refusing to submit special issue No. 1, requested by defendant.

[7] Appellant insists that even though it is presumed that the parties contracted in contemplation of article 6394f, Rev. Civ. Stats. of Texas (Vernon's Sayles' Ann. Civ. St. 1914), and therefore the provisions of said article requiring the bond to be drawn, payable to materialmen and laborers, will be read into the bond, such presumption is not conclusive, and where overcome by the language of the contract and bond and surrounding circumstances, and the evidence showing that the surety submitted to the city a statutory bond, containing the statutory provisions for the benefit of laborers and materialmen, and the city rejected such bond, and supplied the surety company with a bond which did not contain such provisions for the benefit of

laborers and materialmen, which bond was executed by the surety and accepted by the city, such article will not be read into the bond. The pertinent parts of article 6394f, V. S. C. Stats. 1914, are as follows:

"That any person or persons, firm or corporation entering into a formal contract with this state or its counties or school district or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state or any municipality on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claims and judgment of the state or municipality. * * *"

Article 6394g provides that if no suit should be brought by the state or municipality within 6 months from the completion and final settlement of said contract, then such parties supplying the contractor with labor or material upon taking certain steps to secure same may secure a certified copy of the bond and contract upon which such party so furnishing such labor and material shall have a right of action for his or their use and benefit against the contractor and his surety.

The appellant by his propositions calls our attention expressly to the refusal of the city to accept a bond containing the required statutory provisions relating to laborers and materialmen and of the city's action in furnishing and requiring a bond without those provisions, as showing that it was not within the contemplation of the parties to the bond that the statutory provisions should be read into the bond.

We do not concede that the intention of the parties to the bond can have any controlling effect upon the question of whether or not the statute shall be read into the bond. The Legislature, in passing the act, did not say, or intimate, that the parties to the building contract had any choice in the matter. They simply required all such contracts to contain the provision making it payable to, or for the use and benefit of, laborers and materialmen furnishing such labor or material. To permit the parties to such a contract or bond to expressly, or impliedly, exclude such statutory parties, would be to nullify the statute. For that reason parol evidence was not admissible to establish what was in the contemplation of the parties to the bond and to permit their exclusion because the parties executing and accepting such bond contemplated excluding them.

[8] As stated above, it was clearly implied under the terms of the contract Ware made with the city that Ware was to supply the labor and material necessary for the proper fulfillment of his contract by recourse to the market. This being true, the parties to the contract could not, expressly, or impliedly, exclude beneficiaries under the bond, named by law. The statute should be read into the bond, and, having done so, Klein, as a materialman, was one of the beneficiaries of such bond. Being a party to the bond, with a copy of the contract attached, the surety company had actual notice of the contents of both, and is also presumed to know the provisions of the statute. Trinity Portland Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483.

"When an agreement is silent or obscure as to a particular subject, the law and usage become a portion of it and constitute a supplement to it and interpret it." 5 Cyc. pp. 754, 755; also 9 Cyc. p. 582.

Construing article 2369 of the Revised Statutes 1895, providing that "all sales of real estate made in this state under powers conferred by any deed of trust or other contract lien shall be made in the county in which such real estate is situated," Judge Gaines in Kerr v. Galloway, 94 Tex. 646, 64 S. W. 859, discussing the provision in a deed of trust requiring that land be sold in a county in which the land was not situated, says:

"If the purpose had been to strike down the power altogether, the intention could have been easily expressed in direct language by declaring that all powers which authorize a sale of land in any other county than that in which the property lies shall be 'ineffectual,' 'void,' or 'incapable of execution,' or by using other terms of like effect. But such is not the language employed. The Legislature do not even say that the parties shall not stipulate that the sale may be made in a different county from that in which the property may lie. They merely declare that it 'shall be sold in the county in which the real estate is situated,' clearly meaning, as we think, that, however the deed may provide as to the place of sale, the sale must take place in the county where the property lies. Under a familiar rule frequently announced, the law enters into the contract and becomes a part of it. * * * The rule has been frequently applied in this court in construing our statute in relation to assignments for the benefit of creditors. For example, an insolvent debtor may make an assignment of only part of his property for the benefit of his creditors, or may make it for the benefit of some of his creditors only. In such case, the exclusion of property not described in the 'assignment and of creditors not named is clearly implied, and yet it is held that, by force of the statute, the assignment is valid as a conveyance of all the property of the assignor not subject to forced sale for the benefit of all his creditors. [Emphasis ours.] * * * The

parties to an agreement are presumed to know the law and to stipulate with reference to it."

[9] The purpose of the statute being to protect laborers and materialmen, to the extent only that it makes them beneficiaries of the security, it will be so read into the statute; but they not being parties to the building contract, and not having knowledge of its terms, are not bound by stipulations intended only to establish contractual relations between the city and the contractor.

"It is true, the bond sued on herein having been given under the provisions and requirements of the statute, such provisions will be considered as read into and incorporated therein." Foust v. Bibb (Tex. Civ. App.) 258 S. W. 924.

[10] When a statute prescribes a duty and a contract is made involving performance of the duty, such statute becomes a part of that contract. 13 C. J. § 523, pp. 560, 561.

[11] The city of Amarillo, under the terms of the contract and of the statute as read into the bond, was a trustee for all of the statutory parties. United States Fidelity & Guaranty Co. v. Burton Lumber Co. (Tex. Civ. App.) 221 S. W. 699, 702.

[12] Appellant urges as a defense to appellee's recovery herein that, when a materialman supplying materials to a public contractor has independent security other than the contractor's bond and loses such additional security by his negligence, such as failure to record his chattel mortgage, or failure to notify the public body, in due season, of his defaulted indebtedness, the surety is discharged from liability to such materialman to the extent, at least, of the security so lost.

There is no allegation in defendant's pleading of a specific loss of certain sums of money or property by the negligence of Klein, but, if there was, it would be ineffective in charging Klein with such negligence as would entitle appellant to defend against Klein's recovery. The surety company was one of the original promisors and debtors from the beginning, and is chargeable with knowledge of default of Ware, its principal. 1 Brandt on Suretyship, § 3.

The general rule is that a creditor owes no duty of active vigilance to the surety to enforce the collection of the indebtedness arising from the obligation, as the latter at any time after default of the principal is entitled to pay the debt and reimburse himself by enforcing it against the principal. Self Motor Co. v. First State Bank (Tex. Civ. App.) 226 S. W. 428, citing 21 R. C. L. § 162, p. 1124; Nunn v. Smith (Tex. Civ. App.) 194 S. W. 406; Hunter v. Clarke, 28 Tex. 159; Dillard v. Chandler (Tex. Civ. App.) 157 S. W. 303; Bank v. Gilvin (Tex. Civ. App.) 152 S. W. 656. See, also, Arnett v. Simpson (Tex. Civ. App.) 235 S. W. 982.

We do not believe that appellant's propositions and assignments present reversible error; hence we overrule them, and affirm the judgment of the trial court.

JACKSON, J., not sitting.