ROHR *v.* BEAMER ET AL.

(Decided October 18, 1933.)

*Mr. F. P. Burke,* for plaintiff in error.
*Mr. Franklin L. Maier,* for defendants in error.

SHERICK, P. J. The plaintiff in error, Arnold Rohr, who was the plaintiff below, complains of the trial court's action in sustaining a demurrer to his amended petition, and in entering final judgment against him. The pleaded facts are that the plaintiff recovered a judgment against one Claude R. Kramer, then the

service and safety director of the city of Massillon, in an action for false imprisonment.

The judgment was thereafter in part satisfied, but, before full payment had been made, the judgment debtor sought refuge behind bankruptcy proceedings. By the present action the judgment creditor now seeks recovery of the director's bondsmen, the defendants in error herein.

The petition pleads two ordinances of the city, which provide that the director shall give bond for the faithful performance of his duties, and asserts that such had been done, and that the city had approved and accepted his bond. It is averred that the condition of the bond has been broken, and that the defendants are liable thereon to the plaintiff.

A portion of the bond is pleaded, and the question here made evolves around the wording thereof. The bond recites: "Know all men by these presents, that we, Claude R. Kramer, L. V. Beamer and Clarence Spuhler, are held and firmly bound unto the State of Ohio for the use of the City of Massillon in the sum of $2,400.00."

The bondsmen maintain that the phrase, "for the use of the City of Massillon," limits their liability; and that the letter of the bond is in no way enlarged by the statutes, Sections 4667 and 4668, General Code, or the ordinances relied upon; and that, as the bondsmen have obligated themselves without compensation, the rule of *strictissimi juris* applies; and that only the city may sue thereon; and that the judgment creditor is not privy to the suretyship contract and cannot maintain this action.

The plaintiff in error recognizes the rule of *strictissimi juris,* but asserts that the phrase is of doubtful import, and that it must be disposed of as surplusage, or that it must be construed reasonably, along with the rest of the bond, and having in mind the purpose intended to be accomplished by it, that is, that such a

bond is not required primarily for the protection of the city, but for the purpose of indemnifying persons injured by the misconduct of the officer bonded. It is further urged that the bondsmen are charged with notice of the intent and purpose of the statutes and ordinances, and that such must be read into the bond and made a part thereof in the same manner as Sections 2365-1 to 2365-4, General Code.

Before proceeding to consider the question presented by these divergent claims, we deem it first expedient to eliminate from our consideration an additional thought advanced by the bondsmen. They say that they are not liable because of the fact that the director, in making the arrest, was performing no official duty. This contention is settled adversely to the claim made. It is held in *American Guaranty Co.* v. *McNiece,* 111 Ohio St., 532, 146 N. E., 77, 39 A. L. R., 1289: "The sureties on a bond of an official, conditioned upon the faithful performance of his duties, are liable to all persons unlawfully injured by the nonfeasance, misfeasance or malfeasance perpetrated by such officer, either by virtue of his office or under color of his office."

There can be no question that in this instance the arrest was made under color of office. This position is therefore not maintainable.

And now considering the construction to be placed upon the bond in question. It is at once apparent that the provision, "for the use of the City of Massillon," is an unusual provision, and, if it was not a part thereof, there could be no question as to the liability of the bondsmen. It is conceded that the bondsmen are not paid sureties, that officers of the city were the scriveners of the instrument, and that these defendants were requested to sign it in the form we now find it. Even if they were familiar with the provisions of the general form of the bonds, and the extent of liability on such bonds, they were invited by the bond itself to

loan their names for a lesser obligation, with which the city officials were content and which it accepted as sufficient. The general rule is that one must be held to know the plain purport of that which he signs; and it is a poor rule that would so bind one, but deny him the protection of the limitation embodied in the instrument.

We see nothing obscure or of doubtful purport in the phrase. To our notion it means exactly what it says, and we are unable to see why it should be considered as surplusage. If we were to hold otherwise, this court would find itself in the position of making a contract for the parties, that is, between the city and the director's bondsmen. It is not the province of the court to enlarge the strict letter of the bond itself.

It has been the law of this jurisdiction from the time of *McGovney* v. *State, to Use of Lee's Administrator,* 20 Ohio, 93, that, in case of uncompensated sureties, the doctrine of *strictissimi juris* shall apply. We see no reason for a departure therefrom. We recognize that, where sureties draw the bond and are compensated for the obligations assumed, this rule of construction, if strictly adhered to, would be unjust, and to meet this situation the law has been modified where phrases of doubtful import have been employed. In such case it is proper that such be construed most favorably to those who are intended to be protected by the bond.

The judgment creditor relies upon Section 2365-1 *et seq.,* General Code, and the cases of *American Guaranty Co.* v. *Cliff Wood Coal & Supply Co.,* 115 Ohio St., 524, 155 N. E., 127, and *American Guaranty Co.* v. *Cincinnati Iron & Steel Co.,* 115 Ohio St., 626, 155 N. E., 389. These statutes, however, specifically require that their provisions shall be read into the bond, and both cases have to deal with a compensated surety. In the present controversy it must be noted that the statutes and ordinances providing for the giving of

official bonds contain no positive legislative injunction making it mandatory that their provisions must be read into the bond. The defendants suggest the further authority of *Southern Surety Co.* v. *Chambers,* 115 Ohio St., 434, 154 N. E., 786. It is therein pointed out that the question made under the wording of Section 2365-1 *et seq.,* General Code, is one of first impression, and the three cases in this volume are decided and the general rule modified because of the special statutory mandate. These cases are no authority for the claims advanced.

The defendants' obligation is purely contractual, and, inasmuch as the petition does not allege or disclose a privity of contract existing between the judgment creditor and his debtor's bondsmen, we must conclude that the petition does not state a cause of action against them. The judgment is affirmed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.